· Matter of Jackson. **787**

Misc. 787]   Surrogate's Court, New York County, November, 1924.

In the Matter of the Estate of Caroline M. Jackson, Deceased.

Surrogate's Court, New York County, November 5, 1924.

**Taxation — transfer tax — appeal from order fixing value of common stock of close corporation in transfer tax proceeding — appraisal predicated on selling price of said stock erroneous — appraisal should be based on book value of stock — commissions on trust funds of estate should be deducted on appraisal — report remitted for appraiser's failure to set out proper minimum tax and to properly describe interest of remainderman.**

In the absence of the market value of stock of a close corporation at a decedent's death, the controlling element as to the valuation of the stock is the book value thereof.

Accordingly, in transfer tax proceedings, it was error to predicate the value of the common stock of a close corporation on certain sales of the stock, particularly where said sales did not indicate the true value thereof and were made to persons who were about to become, or already were directors of the company.

An allowance also should have been made for the trustee's commissions on the several trust funds.

The report should be remitted to the appraiser for correction where it describes certain of the transfers to a remainderman as deferred legacies rather than contingent remainders, and fails to recite a proper minimum tax on transfers under various other contingencies of the will.

APPEAL by the executor from an order fixing the transfer tax.

*Stetson, Jennings & Russell,* for the appellants.

*Charles A. Curtin,* for the State Tax Commission.

FOLEY, S.:

The executor has appealed from the order fixing the transfer tax upon three separate grounds:

(1) The first ground of appeal is that the common stock of the Boorum & Pease Company has been appraised in the report in excess of the true value of the stock at the date of decedent's death on April 15, 1922. She was the owner of 1,111 shares of the common stock of that company, out of a total capital of 4,000 shares. This corporation manufactures and sells standard blank books and loose-leaf devices. The transfer tax appraiser has valued the stock at $299.21 per share. It is contended by the executor that the true value was $100 per share. The concern was a close corporation. Its president, in his affidavit submitted to the appraiser, stated " that the shares of stock in this corporation are not bought and sold to any great extent but they remain in the hands of the families of the original owners from generation to generation." In this affidavit he stated the value of the common

stock to be $85 per share. In a subsequent affidavit he repeated his statement that the stock was not listed on any stock exchange and that it was not bought and sold by any brokerage house and that there were no purchases or sales of this stock in the open market. He modified his previous affidavit, however, to the extent of setting forth five sales of the common stock immediately before and after the death of the decedent. These sales were all at the rate of $100 per share. The sales and amounts were as follows:

April 3, 1922, 150 shares to Frank B. Foster; on the same date, 330 shares to A. W. Erickson; on July 11, 1922, 47 shares to Frank S. Voss; on August 1, 1922, 20 shares to Edwin S. S. Sunderland; and on January 25, 1923, 50 shares to A. W. Erickson. It is claimed by the executor that these sales are controlling upon the appraiser and the surrogate in fixing the value of the stock. The dividend rate on the common stock for a period of ten years was six per cent. An examination of the statement of earnings and the balance sheets discloses a book value, including good will, as of the date of death of approximately $375 per share. The accountant expert for the State has eliminated from this book value an item of $310,905 carried in the balance sheet for good will and patents. He thus reached the valuation fixed above of $299.21 by accepting the financial statement filed by the company, its valuation of the physical property, its estimate of depreciation and other elements submitted with the report. A further analysis of the financial reports of the company indicated that upon the $400,000 of common stock for the year ending February 28, 1920, the net earnings, after deduction of taxes and all other charges, were at the rate of seventy-three per cent. For the year ending February 28, 1921, the net earnings were at the rate of twenty-five per cent. For the year ending February 28, 1922, there was a loss in the operation of the business. The company's surplus, at the time of the death of the decedent, was $1,195,278.81. No disclosure of the earnings prior to 1920 has been made by the executor nor the officers of the company, but the average net earnings on the common stock for the last three years were at the rate of sixteen per cent. It is interesting to note that the accumulated surplus at the beginning of the fiscal year of 1919–1920 was $1,075,326.29, which indicates a very high rate of return in previous years.

It further appears that the sales of stock set forth above were made to persons about to become or already directors of the company, although they were not necessary to qualify them as directors. In any event these sales are not a compelling argument to justify a finding that the selling price was the true market value of the stock. The authorities have pointed out that sales of stock

MATTER OF JACKSON. **789**

Misc. 787]    Surrogate's Court, New York County, November, 1924.

of closely held corporations to officers or stockholders are not an exclusive criterion of value.   Moreover, scattering sales of relatively small lots were held in *Matter of Curtice* (111 App. Div. 230; affd., 185 N. Y. 543) by Mr. Justice HISCOCK, now chief judge of the Court of Appeals, not to be conclusive evidence of valuation.   In the present case the disparity between the price realized upon these sales and the book value of the stock, after the appraiser deducted a substantial allowance, is so great that the selling price can have little probative force.   *Prima facie* the book value of the stock of a closely held corporation is the controlling element in its valuation.   (*Matter of Dupignac*, 123 Misc. 21, and the cases comprehensively reviewed therein by Mr. Surrogate SLATER.)   In *Matter of Hoffman* (204 App. Div. 497) the First Department of the Appellate Division held that an isolated sale was not controlling upon value and in the absence of proof of the market value at the date of decedent's death, " the stock should have been valued on the basis of the corporate assets, including good will, earnings, etc." (*Matter of Ball*, 161 App. Div. 79.)   Considering all the proof of value submitted to the appraiser including actual sales of the stock, the statements of assets and liabilities, the actual earnings and the earning power of the corporation and the other evidence submitted to the appraiser, I shall fix the value of the common stock at $250 per share.   The appeal is sustained to that extent.

(2) The second ground of appeal is sustained.   The trustee's commissions on the several trust funds should have been allowed as a deduction.   (*Matter of Blun*, 176 App. Div. 189; *Matter of Nichols*, 120 Misc. 228.)

(3) The third ground of appeal is sustained.   The order fixing the tax failed to set forth the proper minimum tax.   It is apparent that the remainders to Arthur W. Bingham, Jr., are contingent in their nature.   Under the terms of the will, one-fourth of the trust vested in Arthur W. Bingham, Jr., at the date of death because of his having attained the age of twenty-one years.   The will further directed the payment over of one-fourth of the remainder of the trust to him when he arrived at the age of twenty-five, and an additional one-fourth when he arrived at the age of thirty, the remaining part to be held in trust until his death.   The terms of the will authorized Arthur W. Bingham, Jr., the remainderman, to dispose by will under the power of appointment of the balance of the trust estate remaining at his death, regardless of when it occurred.

The report incorrectly describes certain of the transfers to Arthur W. Bingham, Jr., as deferred legacies.   They' are actually contingent remainders.   The report is, therefore, remitted to the appraiser for correction.   The appraiser should report the value

of the temporary life estate until the age of twenty-five years as against Arthur W. Bingham, Jr. The report should also contain the value of the transfers under the various other contingencies of the will in order that a proper maximum and minimum order may be made.

Submit order accordingly.