William T. Moore died testate December 12th, 1926, resident in New Jersey. His executors appeal from the assessment and levy of transfer inheritance tax against his estate.
The comptroller in computing the tax appraised seven hundred and forty-six shares of the capital stock of the Galen Hall Company, held by decedent, at $378.28 per share. Appellants contend that the appraisal should have been not more than $100.50 per share.
It appears that there was a public sale of two hundred shares of the stock, by stock brokers, near the date of decedent's *Page 401 
death, at $100.50. The comptroller evidently declined to accept this as conclusive proof of the value of the stock and made an investigation of the company's assets and liabilities, and determined that the value of the stock at decedent's death was $378.28. In appraising the company's assets its real estate was appraised by the comptroller at $750,000, whereas appellants contend that it should have been appraised at only about $518,000.
The several grounds of appeal specified in the petition amount to the following:
1. That the comptroller's appraisal of the testator's shares of stock in the Galen Hall Company is greatly in excess of the true value of said stock.
2. That the comptroller's appraisal of the real estate of the Galen Hall Company is greatly in excess of the true value of said real estate.
3. That the comptroller assessed the testator's stock in the Galen Hall Company according to its book value instead of according to its market value, which was much less; and that this was error.
So far as concerns the first two of these, this court will undertake no determination. It is not the function of this court, on these appeals, "to weigh the evidence or to substitute its judgment, as to values, for that of the comptroller." In rePierce, 89 N.J. Eq. 171 (at p. 172). To upset these tax assessments on the ground that the comptroller's appraisal values are excessive, it must, in this court, be shown, either that there was no evidence to support such values, or that error was committed with respect to the application of legal principles. The record certainly shows sufficient evidence on which the comptroller's valuations, both as to the stock and as to the real estate, may fairly be supported.
The only allegation of error with respect to the application of legal principles comes under the third ground of appeal mentioned above, and is to this effect — that the comptroller ignored the market value of the stock and appraised it solely at its book value, whereas he should have appraised it at its *Page 402 
market value, which is alleged to have been not over $100.50 per share.
The taxes imposed by the Transfer Inheritance Tax act are at a certain rate per cent. "upon the clear market value" of the property transferred. As to shares of stock in large corporations with many shares of stock widely held by a great many people, and daily bought and sold in the stock market, there is no difficulty in ascertaining such clear market value. The situation, however, is very different when it comes to smaller corporations, with stock held by comparatively few people, and with only one or two scattered sales a year of a few shares.
In the latter case there is no established market and the "clear market value" is impossible of ascertainment.
The Galen Hall Company had two thousand six hundred and ten shares of stock outstanding, held by about fifty people. Testator died December 12th, 1926. In January, 1926, sixty-four shares were sold at $95, and two shares at $100.50; in January, 1927, nine shares at $100.
Sales in January, 1926, do not establish market value at the time of decedent's death. In re Hoffman's Estate,198 N.Y. Supp. 401; In re Colt's Estate, 211 N.Y. Supp. 541;213 N.Y. Supp. 783. Neither does a sale of nine shares in January, 1927. In reCurtice's Estate, 97 N.Y. Supp. 444; 185 N.Y. 543; In reJackson's Estate, 211 N.Y. Supp. 537; 218 N.Y. Supp. 783. See, also, In re Davidson's Estate, 211 N.Y. Supp. 540, and In reBottomley, 92 N.J. Eq. 202 (at p. 203).
Under such circumstances as those in the case at bar these authorities hold that the determination of taxable value is to be determined on the basis of the value of the corporate assets — the so-called "book value." Such a course is logical; and it is practically the only possible course; at any rate such a determination may be taken as a basis, and modified according to such other circumstances as appear (if any), which might affect the valuation.
Moreover, our statute is taken from the New York statute, and the determinations of the New York courts are therefore of much weight, if not controlling. *Page 403 
Appellants cite In re Morris Canal and Banking Co.,104 N.J. Law 526, in support of their contention that "book" valuation is erroneous. That case, however, deals with an entirely different situation and subject-matter — the valuation of stock for the purpose of ascertaining damages on condemnation, not valuation for taxing purposes, and involved stock of a corporation whose shares were many and widely held, and where the fair market value was readily ascertainable.
It may be added that it is not without significance that there is no testimony or intimation in the record that the executors have offered or would be willing to sell the stock at less than the appraised valuation.
It is admitted that due to an inadvertent mathematical mistake in computation, the appraised valuation of the stock should be reduced by $7.79 per share. The record will be remitted for that correction; otherwise the tax will be affirmed.