The complainants' trustees seek advice and guidance. They are trustees of four funds created out of the property of the late George J. Gould. *Page 380 
1. Mr. Gould bequeathed to them $4,000,000 in trust for his widow (now Lady Dunsford) for life, remainder over to her three children.
2. Mr. Gould bequeathed and devised to them the residue of his estate in trust, severally, for his ten children (seven by his first wife and three by Lady Dunsford) for life, remainder over to their children.
3. Mr. Gould gave to them, in contemplation of death, $1,000,000 in Liberty bonds upon trust for his widow for life, remainder to her three children.
The nature of the remainders over in the three trusts is of no moment in this litigation.
4. The executors of Mr. Gould paid to them three funds of $100,000 each, in trust, one for each of the three children of Lady Dunsford. These came from a settlement agreement presently to be mentioned.
The executors of the estate of Mr. Gould having paid the New Jersey transfer tax on the $4,000,000 preferential trust and on the $1,000,000 Liberty bond trust, transferred in contemplation of death, as well as the tax as compromised, on the remainders in the preferential trust and in the ten residuary estate trusts, called upon the trustees for reimbursement and the trustees call upon the court for instructions, protests having been lodged with them against repayment out of the trust funds upon the transfer of which the taxes were assessed.
The protestants claim that the preferential trust is chargeable with the transfer tax on $2,175,000 only, it having been reduced by $1,825,000 paid by the executors to the ten children of Mr. Gould, and they contend that the latter should bear the tax on the sums they received.
The taxing officer originally assessed the trust at the reduced amount and levied the balance against the ten children severally. The assessments were set aside and the tax was ordered levied upon the transfer by the will of the $4,000,000. In re Gould,105 N.J. Eq. 598; 108 N.J. Law 197; 8 N.J. Mis. R. 798. The story is told in the cited case why $1,825,000 of the fund was paid to the ten children of Mr. Gould *Page 381 
and the part it played in the settlement of Mr. Gould's liability to his father's estate (Jay Gould estate) and in saving the preferential trust and the residuary estate of Mr. Gould from utter annihilation. $1,525,000 was contributed by Lady Dunsford toward imbursing her seven step-children, each to the extent of $217,857, for the diminuation of their life interests in the residuary estate of their father, lost to them by the call upon the residuary estate of $5,442,392.55 to settle the claim of the Jay Gould estate, and to appease them and ease the New York settlement, lest the whole structure topple upon all of them. $300,000 was an arbitrary allotment to Lady Dunsford's three children, exacted by their New York guardian as the price of his consent to the Jay Gould estate settlement.
The payments were net. They were disbursements out of a fund charged with a tax, the lien of which remained a burden on the fund. And manifestly it was so understood, for, according to the terms of an agreement of all the interested parties in Mr. Gould's estate, corollary to the settlement agreement with the Jay Gould estate, it was stipulated that the trustees of the preferential trust would "pay out of the principal of the said trust fund so received by them, such transfer inheritance tax, interest and penalties upon the life interest of Guinever Dunsford therein as they the said trustees may deem to be properly assessable thereon by the State of New Jersey, or, as after litigation may be finally adjudged to be due and payable." And it has been finally adjudged by our highest tribunal that the tax was due and payable by Lady Dunsford. Moreover, after the $1,825,000 was withdrawn from the $4,000,000 preferential fund Lady Dunsford, pursuant to the right reserved to her by the agreement, made claim to interest on the $4,000,000 legacy, accrued thereon since the death of Mr. Gould, and it was adjusted at $605,000 and paid by the executors. By law, agreement and by conduct, Lady Dunsford's supposed equities against the children of Mr. Gould, that they contribute toward her transfer tax, vanish and her claim must be denied. The trustees are directed to pay the tax. It is payable out of *Page 382 corpus. In re Diehl's Ex., 88 N.J. Eq. 310; affirmed,89 N.J. Eq. 209.
The $1,000,000 Liberty bond trust was taxed by the comptroller as a transfer in contemplation of death. His ruling was challenged and upheld in In re Gould, supra. Litigation in this court, among various interests, ended in a compromise by which the validity of the gift of the Liberty bond trust, contested by Mr. Gould's executors, was conceded, one of the terms being that:
"8. The trustees, as trustees for Guinevere S. Gould and others under the trust agreement dated December 14th, 1922, will reimburse the executors of George J. Gould for the amount by which the federal estate tax and/or the New Jersey transfer inheritance tax assessed against the estate of George J. Gould or the legacies passing under the residuary clause (clause fourth) of his will may be increased by reason of the inclusion in the estate of George J. Gould for the purposes of such taxes, of the fund of $1,000,000 referred to in paragraph 1 of this agreement. The amount by which such taxes are so increased shall be determined by taking the average rate of taxation assessed upon the estate as to federal estate tax and upon the residuary bequest as to the New Jersey transfer inheritance tax."
The Liberty bonds transfer was, of course, not included in the New Jersey transfer taxes assessed against the residuary legatees under Mr. Gould's will and they were not increased; the tax on the Liberty bonds gift was assessed against the donees. The obvious design of the quoted paragraph, notwithstanding the confusion of the draftsman, was to charge the Liberty bonds trust with the transfer tax as assessed and counsel for Lady Dunsford concedes that it was the intention to relieve the estate from its payment. The stipulated indemnity in this respect is inoperativein toto and the right of the executors to reimbursement rests in law, intended to be preserved to them by the agreement. The tax is chargeable to the trustees, who, in law, are accountable to the executors, they having paid it to the state. It was so held, in similar circumstances, in Farmers Loan and Trust Co.
v. Winthrop, 238 N.Y. 477, under the New York statutes, the model of ours. The trustees are instructed to charge the tax against the Liberty bond trust. *Page 383 
The right to reimbursement for the federal tax is not questioned.
The taxes paid on the remainders in the preferential trust and in the ten residuary legacies under Mr. Gould's will, as compromised, will be charged proportionately to the respective funds, but, query: May they be charged to the diminution of life tenants' income on principal?