Appellant appeals from the transfer inheritance tax assessed in the above estate. The grounds of appeal set forth in the petition are that the appraisal or determination of values of three specified assets of the estate, as made by the state tax commissioner, were and are erroneous and in excess of the true value of the said assets. The appellant contends therefore that the tax, which was computed and assessed upon the basis of those valuations, is erroneous.
The assets in question are as follows: —
1. Two promissory notes of Summer Homes Protective Co., — appraised by the commissioner at $4,058.51.
2. 1043 shares of the second preferred stock of A.G. Spalding and Bros., — appraised by the commissioner at $106,907.50.
3. 38,910 shares of the common stock of A.G. Spalding and Bros., — appraised by the commissioner at $758,745.00.
No mention is made in the appellant's brief as to the promissory notes mentioned in item No. 1 above; and the appeal is accordingly deemed abandoned insofar as concerns that item.
Under the statute the commissioner is required to determine and fix the "clear market value" or "fair market value" of the property comprised in the testamentary transfers. Appellants contend that the phrase "fair market value" is the correct meaning and intent of the statute, — and we may accept that as the correct principle.
Appellants also contend that by reason of this language, "fair market value," the commissioner is not required to appraise nor justified in appraising shares of stock solely at the price shown to have been the actual market value of the *Page 605 
stock, on the stock exchange, at the time in question, disregarding any and all other factors, — but is required to find and determine the "fair market value." We may accept this also as a statement of the correct principle.
The appellants further contend that the fair market value is "the fair value as between one who desires but is not compelled to buy and one who is willing but not compelled to sell." This is not controverted by the respondent, and we may, — for the purposes of this case at any rate, — accept that as a correct statement of principle or definition.
The commissioner determined the value of the 1,043 shares of the second preferred stock of Spalding Bros. to be $106,907.50, — which is at the rate of $102.50 per share. The stock was not traded in on the stock exchange, nor on any other regular market; there were no sales on the date of testator's death; there were a few scattering sales about three months before and three months after the date of death, to wit, June 10, 1931, 10 shares at $115 each; June 18, 1931, 10 shares at $115 each; January 14, 1932, 10 shares at $90 each; January 19, 1932, 10 shares at $90 each. The date of decedent's death was September 11, 1931.
The commissioner, in making his appraisal, did so on the basis of a consideration of the average price of these sales, the assets and liabilities of the company as shown by its financial statements, and also the fact, in connection with the financial statements of the company for previous years, that the company has paid yearly dividends of eight per cent. on that stock over a period of many years.
The presumption is in favor of the correctness of the appraisal and assessment, and the burden is upon the appellants to establish the alleged error. In re Pierce's Estate, 89 N.J. Eq. 171,104 Atl. Rep. 298; In re Grabfelder's Estate,107 N.J. Law 520, 153 Atl. Rep. 532. They must establish such a situation as will require this court to say that the determination of the commissioner is erroneous as a matter of law. In re Gould'sEstate, 105 N.J. Eq. 598, 148 Atl. Rep. 731.
Unless the appellants establish that the result reached by the commissioner is incorrect as a matter of law, the tax must *Page 606 
be affirmed. Defects in the steps taken to reach the result are of no materiality unless the result is shown to be incorrect. Inre Bottomley, 92 N.J. Eq. 202, 111 Atl. Rep. 605. Unless, therefore, the appellants establish the fact that the value placed by the commissioner upon this stock is either in fact or legal presumption, not correct, — is not the fair market value of that stock, — the tax will not be set aside by this court.
It is not the function of this court on these appeals to weigh the evidence, or substitute its own judgment as to values in place of the judgment of the tax commissioner. In re Pierce'sEstate, supra; In re Moore, 104 N.J. Eq. 400, 145 Atl. Rep. 727.
The commissioner acts in the province of a jury in determining the fact of value. This court will not set his determination aside on the ground that it would have arrived at a different conclusion on consideration of the evidence before the commissioner. It will only set that determination aside if it appear that the commissioner declined to receive or consider evidence which as a matter of law he ought to have received and considered, and if it appears that as the result of such legal error, the valuation at which he arrived was, in legal presumption, not the fair market value required by the statute, — or when it is proven that his valuation is in fact not the fair market value.
Keeping these principles in mind it is clear that the appellants do not present a case which would justify this court in setting aside the commissioner's determination of the value of the 1,043 shares of second preferred stock. With one exception he received and considered the evidence of various kinds relevant and competent to be considered in arriving at a determination of the value of this stock, — including the opinion evidence of certain experts offered by appellants. As the result of that consideration he arrived at his determination of value. He was by no means legally bound to accept and adopt as his own determination of value the opinions of the experts; nor can this court say as a matter of law that he should have given such opinions controlling weight over the other evidence before him, in arriving at his determination. *Page 607 
If there was evidence, legally and properly before the commissioner, sufficient to enable him to arrive at the conclusion he reached, — (and there was, in the instant case), — and if he did not exclude, or refuse to consider, any evidence competent, relevant and material to the issue, which if received and considered, might have influenced him to arrive at a different conclusion, — (and there was no such exclusion in the instant case), — then this court will not, on appeal, set aside his determination or the taxes assessed in accordance therewith.
The single exception above referred to, — the single instance of evidence which the commissioner refused to consider, — was the testimony of Mr. Lincoln, vice-president of Spalding Bros. (who acted as a broker or market agent in respect of sales of the stock in question) that on July 15, 1932, (ten months after the date of death) he received an offer to sell 10 shares at $30 a share, and had not been able to find a purchaser therefor up to the date of his affidavit, eleven days later. Exclusion of, or refusal to consider, that particular bit of testimony was clearly not error, under the well established law of this state.
As to the value of the 38,910 shares of the common stock, — this was fixed by the commissioner at $758,745.00, which is at the rate of $19.50 per share.
This stock was listed and traded in on the New York Stock Exchange and there were actual sales thereof, almost daily, before and after the date of death. There was no actual sale on the day of decedent's death, but the bid and asked quotations on the Exchange on that day were respectively $19.00 and $19.50. Taking the average throughout the month of September, 1931, of the actual sales, the average minimum price per share was $19.388 and the average price was $19.611; the average bid price was $19.125 and the average asking price was $20.55. The daily volume of sales in September ran mostly between 100 and 500 shares, — although on one day there were 1,300 shares and on another 2,600.
The commissioner in arriving at the valuation fixed by him considered these sales and quotations on the stock exchange; he also considered the financial statements of the company, *Page 608 
the average yearly dividends which had been paid, the capitalized value of the stock on the basis of the yield represented by those dividends, the book value as shown by the financial statements, the average sale price of the stock on the New York Stock Exchange for three and one-half months prior to, and three and one-half months subsequent to the decedent's death. He also had before him and considered the opinion evidence of experts offered by the appellants, including their statements as to facts and circumstances on which they based their opinions. There is no evidence that the commissioner excluded or refused to consider any testimony or evidence, competent, relevant and material to the issue.
It does appear that in arriving at his determination of the value of the stock, the commissioner arrived at the valuation per share and then fixed the value of the block of 38,910 by multiplying the number of shares with the value per share. The appellants contend that this constituted legal error.
The appellants further contend that it is incontrovertible on the basis of the record that the price of $19.50 per share was not, and could not be, the fair market value per share because of the fact that that was the market value on the stock exchange quotations and that value on the stock exchange was the result of support of the market by Spalding Bros. Co. and by decedent himself.
As to the first proposition, the appellants' contention is that assuming that the price of $19.50 per share is the fair market value of the stock in lots of a few hundred shares, it is not, and cannot possibly be, the fair market value for a block of nearly 40,000 shares. Their argument is that if they had placed this entire block on the market for sale on the day of decedent's death, the market could not have absorbed it and would have broken and the price would have fallen to practically nothing; that the only way in which they could market this block of shares without undue sacrifice was to market it from time to time in lots of a few hundred shares over a period of months, so as to avoid breaking or depressing the market and the sale prices; that if they had marketed it in this last mentioned way over a period of some ten months, *Page 609 
which they say would have been a reasonable time, the result would have been prices of about $10.00 per share.
This argument is unsound. It is undoubtedly true that if the executors had placed this entire block on the market on the day of decedent's death, the price would have broken to approximately nothing. But the executors were not required to sell that block on that day. The statute says nothing about selling; the statute speaks only of the fair market value on the day of death.
Naturally the executors would not have sold that block on that day unless they were in some way compelled to do so. If they had been so compelled, then the sale would not have been by a seller willing but not forced to sell. Hence the price which would have been obtained in such a bulk sale would not be any criterion of fair market value, — (except perhaps as proving a minimum limit of value).
The fair market value, according to appellants' own contention, is the value as between one willing to sell but not forced to sell and one willing to buy but not forced to buy. This presupposes the existence of one willing to buy but not forced to buy. The fact that there actually was not on the day of decedent's death anyone willing to buy a block of 40,000 shares of this stock is immaterial; the value is to be determined upon the hypothesis of the existence of such a willing purchaser. If such a one had existed, what price would he have been willing to give for the block?
Obviously it cannot be said as a matter of law that if a willing purchaser for 40,000 shares had existed on that day, he would not have been willing to give 40,000 times the market price per share. If he believed that the market price per share would rise considerably in the near future and would continue to rise for a long period of time thereafter, he might well have been willing to give somewhat higher than the actual market price per share on that day. The price which he would have been willing to give for the 40,000 shares would have been arrived at in his mind by a consideration of the same factors which were considered by the commissioner, — plus possibly certain other facts and circumstances *Page 610 
which might have been known to him and which were not submitted to, or within the knowledge of, the commissioner.
Obviously also the fact that if the executors had marketed this stock in small lots over a period of ten months the net result would have been obtaining an average price of about $10.00 per share, in nowise proves that the value of the block of shares, on the day of decedent's death, was not that fixed by the commissioner. The fact that the market price of the shares went down during this subsequent period of ten months, or that it would go down during that period in the way in which it did go down, was of course not known, and could not have been known, by anyone on the day of decedent's death. The mere fact of actual subsequent prices therefore cannot be considered in arriving at the value on the day of death. The market price on the date of death would of course be affected by the trend of prices at that time and by those facts and circumstances then known which would tend to influence opinion or belief as to the probable future price. All these circumstances, or at least such of them as were submitted to the commissioner, were considered by him.
If subsequent prices were to be deemed controlling, or even an influential factor, why should the consideration of subsequent prices be limited to ten months? Prices of stock, generally, have advanced very considerably during the last two years.
Neither can it be said as a matter of law that the fact that the market price on the stock exchange was the result of support of the market by the company itself and by the decedent, necessarily shows that that market price was not a fair market price. It would be quite possible, if not indeed probable, that such support of the market would have been induced by the belief on the part of the company and of decedent that the fair value of the stock was in fact equal to, or in excess of, the market price which they supported; and indeed the record in the present case shows that that in fact was the belief of the company and of decedent in this instance.
At any rate, the fact of that support of the market, and the attendant circumstances were all before the commissioner and were considered by him. *Page 611 
As stated before, the opinions of the experts are only their opinions, and while the appellants were entitled to have those opinions considered, they were not, and are not, entitled to have the commissioner absolutely adopt them as his own, notwithstanding there may not have been any expert opinion of evidence before him to the contrary. He was entitled to consider all of the competent, relevant and material evidence, not merely this opinion evidence alone, and to base his determination upon his own belief as to what was proven by the entire evidence.
That he did, and the appellants have not proven any error.
The tax will be affirmed.