William W. Renwick, a resident of this state, died March 15th, 1933, leaving by will a net residuary estate of about $145,000 to Renwick Studios, Inc., a corporation of this state. Transfer inheritance tax was assessed on this testamentary transfer at the rate of 8%. Additional taxes were assessed in respect of transfers made by decedent prior to his death comprising property appraised at approximately $655,000. The total tax assessed by the commissioner was $29,791.85, of which the executors paid $1,223.82. By the present appeal they challenge the validity of the assessment of the balance of $28,568.03, and of the charge of 10% interest thereon from March 15th, 1934.
Appellants contend that the commissioner erred in the following particulars:
1. In taxing the testamentary transfer to Renwick Studios, Inc., at the rate of 8% instead of at lesser rates.
2. In imposing any tax whatever upon transfers made by Renwick to his wife and daughters on June 22d 1928.
3. In imposing any tax whatever upon transfers made by Renwick to his daughters and to Renwick Studios, Inc., on March 1st, 1929.
4. In taxing the transfers of 1928 and 1929 on the basis of the value (of the property transferred) as of the date of those transfers instead of as of the date of Renwick's death.
5. In taxing the remainder under three trust deeds. *Page 566 
6. In determining that the value of stock of Renwick Studios, Inc., was $65.66 per share on June 22d 1928, and $81.64 per share on March 1st, 1929.
7. In assessing "penalty" interest at 10% from March 15th, 1934.
The several issues will be taken up seriatim.
1. Did the commissioner err in taxing the transfers to Renwick Studios, Inc., at the rate of 8%?
The transfers so taxed were made, in part on March 1st, 1929, and in part on March 15th, 1933. Concededly they were made to that corporation; and concededly, under the literal wording of the statute in force on each of those dates, they are required to be taxed (if taxable at all) at the rate of 8%. The entire capital stock of the corporation however was held by Mr. Renwick's wife and daughters; and the contention of appellants is that the transfers were intended as, and in substance and effect were, transfers to the wife and daughters and therefor should have been taxed at the lesser rates provided by the statute for transfers to such wife and daughters.
Respondent argues that if the corporate entity were here ignored, there would be no end of difficulties. In the event decedent's wife and children decided to sell a fraction of their holdings, the question as to when the corporation had ceased to be theirs would arise. It would also be necessary to determine what proportion of the transfer should be allocated to creditors of the corporation and at what rate that proportion should be taxed. Insolvency of the company would present greater problems.
While these contentions are unquestionably true, it may well be doubted that such an argumentum ab inconvenienti would be sufficiently cogent to support a conclusion adverse to appellants, if the statute stated or indicated a purpose and intent in conformity with appellants' contentions. The statute however does not express or indicate any such purpose or intent. It provides simply (after exempting certain transfers from any tax) that the transfer of property to charitable corporations or organizations shall be taxed at a certain rate; that property passing to certain individuals who are close *Page 567 
relatives of decedent shall be taxed at certain rates on a sliding scale according to the value of the property transferred, and that all other transfers (which of course includes transfers to corporations like the one here under consideration) shall be taxed at certain other rates likewise on a sliding scale but higher than the rates on transfers to relatives.
There is no provision, express or implied, for any differentiation of rate of tax on transfers to a corporation where the sole stockholders of the corporation are relatives of the transferor. That being so, there is no justification for doing other than applying the plain language of the statute strictly according to its terms. Cf. Koch v. McCutcheon,111 N.J. Law 154, 167 Atl. Rep. 752.
Appellant's contention that a transfer to a corporation whose sole stockholders are the transferor's wife and children, is, in substance and effect, a transfer to those stockholders, — is unsound. There is a very real distinction between a corporation and its stockholders; and while this distinction will be disregarded in equity where it is necessary so to do in order to prevent fraud, deception, evasion or injustice, it is only to be disregarded in such cases and will not be disregarded in ordinary circumstances. See White v. Evans, 117 N.J. Eq. 1, 174Atl. Rep. 731; Fidelity Union Trust Co. v. Roest, 113 N.J. Eq. 368,166 Atl. Rep. 918; Whitfield v. Kern, 120 N.J. Eq. 115, at129, bottom, 184 Atl. Rep. 333; Id. 122 N.J. Eq. 332, at347 top, 192 Atl. Rep. 48.
In the instant case that which is sought by appellants is not any adjustment of equities among the stockholders, but the adjustment of an alleged equity between the state and the stockholders. No such alleged equity is discernible.
The testamentary transfer in question was a gift, — to the corporation directly, to the stockholders indirectly. The donees, direct or indirect, had no interest or right in the property prior to the gift. They had no right, legal or equitable, that the donor should give to them as individuals, instead of to the corporation. Their right to receive any benefit from this testamentary gift, — either directly or through the medium of the corporation, — was not a natural, inherent right; the right to succeed to the property of *Page 568 
another at his death is a right created by the state and existing only by virtue thereof and subject to such conditions as the state imposes, — one of which is the payment of the transfer inheritance tax imposed by the statute.
Neither is there any equity accruing to them indirectly through the testator. He had no equity against the state, to compel the state to assess tax as though his transfer had been to the individuals. He had his free choice, either to bequeath the gift to the corporation or to the individuals. He knew, — or is presumed to have known, — that the gift in the former mode would be subject to a larger tax than if made in the latter mode. That fact, by itself, would be an inducement for him to choose the latter mode; but there would be other results attainable by the former mode and not by the latter, which he might well believe out-weighed the matter of increased tax. At any rate, for reasons of his own, he chose to make the gift to the corporation itself, rather than to the corporation in trust solely for the individuals or to the individuals themselves. It is not perceived that there is any reason whatever why the tax imposed by the statute upon such a transfer should not be assessed and collected in exact accordance with the statutory provisions.
It may be added that the case of In re James A. Paisley,32 Ohio N.P. Rep., N.S., 228, is precisely on all fours with the instant case, and was determined adversely to the contentions of the present appellants.
2 and 3. Did the commissioner err in finding that the transfers made by Renwick to his wife and daughters on June 22d 1928, and to the daughters and to Renwick Studios, Inc., on March 1st, 1929, were taxable?
A. First, as to the transfers to the wife and daughters:
 * * * * * * *
(NOTE: A lengthy discussion of evidence is here omitted at the direction of the vice-ordinary.)
 * * * * * * *
There can be no question, therefore, but that the commissioner was amply justified by these proofs in finding that *Page 569 
decedent made the transfers to the wife and daughters because of an intent and purpose thereby to effectuate an ultimate disposition of the enjoyment of his property after his death, — that they were therefore made in "contemplation of death" as that term is intended in and by the statute; and were therefore taxable.
B. Next, as to the so-called "excess transfer" of June, 1929, from decedent to Renwick Studios, Inc., — (the transfer of property of which the value was found by the commissioner to be greater by $74,790 than the total value of the stock issued by the company in exchange therefor), — which the commissioner found to be a transfer, in contemplation of death, of property of the value of $74,790.07, and taxed accordingly.
As hereinbefore mentioned, immediately prior to the transfers to his wife and daughters of the shares of stock of the Renwick Studios, Inc., in June, 1928, he had conveyed to that corporation real estate and personal property owned by him and which in his judgment were worth an aggregate of $457,200. It was in payment for this that the company issued the 4,572 shares of stock (which of course equitably belonged to Mr. Renwick, and which by reason of his having the company issue them to his wife and daughters, became the subject-matter of the taxable transfers hereinbefore considered).
The commissioner found that the property so transferred by Mr. Renwick to the company was of the actual value of only $300,200 instead of $457,200; and he found therefore that the shares of stock transferred to the wife and daughters were worth only $65.66 per share, instead of par, and he accordingly taxed the transfers to the wife and daughters only on that lesser valuation.
In June, 1929, just prior to the 1929 transfers of stock to the three daughters, and in consideration for the 3,522 shares of stock which were then so transferred to the daughters, Renwick conveyed to the company additional real and personal property of the aggregate value, in his judgment of $352,200. The commissioner found that the actual value of the property then so transferred was $362,574.50. He also *Page 570 
found that the net value of the company's assets just prior to this transfer was considerably below the par value of the then outstanding shares of stock, so that the net result accruing from this transfer of $362,500 of assets to the company from Renwick, and the issuance of the additional 3,522 shares of stock, was that the shares of stock were worth $81.04 each, instead of par (and he assessed the transfers to the daughters accordingly).
The commissioner then concluded that inasmuch as Renwick had thus in June, 1929, conveyed to the company $362,500 worth of property and the company had paid or issued in exchange therefor stock actually worth in the aggregate only $285,500, therefore Renwick had made a gift to the company of the $77,000 difference, and that this gift was in contemplation of death. (Adjustment for certain of the property which was located outside this state brought the commissioner's actual appraisal for taxation down to the $74,790.07 above mentioned.) In this conclusion this court finds itself unable to concur.
Taking the commissioner's appraisals as correct, (and, being supported by sufficient evidence, they are not to be disturbed by this court on appeal), it necessarily results that in fact Renwick conveyed to the company in June, 1929, property of a value of approximately $75,000 greater than the consideration paid for it by the company. It by no means follows, however, that Renwick believed that this was so, or that he intended thereby to make a gift to the company, much less one in contemplation of death.
It seems obvious from the evidence in the case that in each of the two instances of transfer of property from Renwick to the company, he believed that the stock issued therefor by the company had a value equal to its par value, — and believed that the aggregate value of stock so issued in each instance was equal to the value of the property then conveyed. The difference between Renwick's estimates of value and the findings of the commissioner rests chiefly, if not indeed entirely, on the value of the real estate conveyed by Renwick in 1928. This real estate was a large and valuable residential estate, which the commissioner finds had an actual value of $90,000, *Page 571 
whereas Renwick valued it at $236,200. If its actual value had really been $236,200, then the stock issued by the company, both in 1928 and in 1929, would have been worth approximately par, and no question of "excess gift" would have arisen.
That the judgment of different men as to the value of this kind of a piece of property varies widely, is well known; likewise that the value thereof, in the honest judgment of the owner, is almost inevitably far higher than in that of anyone else. It is practically never that a man who establishes an expensive residential estate can sell it for a price anywhere near approaching its cost; people with sufficient money to buy an estate of such expensive character prefer to spend it on a house and grounds designed and built in accordance with their own individual tastes and desires instead of on an estate created by someone else with different ideas.
Furthermore it is to be remembered that 1928 was in the "boom" period of prosperity and constantly increasing prices and values; and this also would naturally have influenced Renwick's belief as to the value of the place.
Of even far greater force, — as to the actual belief of Renwick as to the values in question, — are the following facts: His sales of property to the company were divided. In June, 1928, he transferred securities which he valued at $221,000 in exchange for 2,210 shares of stock; and the real estate which he valued at $236,200 in exchange for 2,362 shares of stock. In June, 1929, he exchanged securities which he valued at $333,700 (the cost to himself) for 3,337 shares of stock and real estate which he valued at $18,500 for 185 shares of stock. The commissioner finds the value of the 1928 securities as $210,220; the value of the 1929 securities as $349,874; the value of the 1928 real estate as $90,000; and the value of the 1929 real estate as $12,700.
The difference between the decedent's valuation of the real estate and the value as found by the commissioner, varies widely in each instance, (as is natural from the consideration above mentioned); but the difference, in each instance, between the two valuations of the securities is so slight as to make it certain that the decedent's valuation of the securities *Page 572 
represented his belief as to their value. The conclusion is inescapable that decedent's valuations of the real estate likewise represented his belief as to their value.
There is no evidence to support a finding that the decedent intended to make any gift to the company; or that he had any belief other than that he was selling his property to the company at a price (in stock), as near as might be, equal to the value of the property. He may well have been mistaken in his judgment in this regard, but that is immaterial with respect to the present inquiry. The situation as to this point is precisely the same as if he had sold an extremely valuable diamond necklace for a price which he thought was adequate, say $100,000, and it later transpired that it was actually worth $150,000. He would not have made a gift of the $50,000 difference, for he did not intend to make a gift, — he did not know that he was selling it for less than its value.
There being no evidence to support a finding that he made any gift to the company, in this respect, it necessarily follows that no such gift was made in contemplation of death; hence the commissioner erred in levying tax in respect of this supposed gift of $74,790.
C. By way of further argument that the commissioner erred in imposing any tax at all on these transfers to the wife, daughters, and Renwick Studios, it is contended by appellants that if the true interpretation of the statutory provisions directs the assessment of tax on the basis of values at the date of gift instead of at the date of death, (in regard to transfers made in contemplation of death), then the statute is unconstitutional and void in that respect; that it would be violative of one or more of the following constitutional provisions:
(1) Art. 1, par. 1, Const. of N.J., — (declaring the natural right to acquire property).
(2) Art. 1, par. 16, Const. of N.J., — (prohibiting the taking of private property for public use without compensation). *Page 573 
(3) Art. 4, sec. VII, par. 4, Const. of N.J., — (that each statute shall have but one object, and that be expressed in the title).
(4) Art. 4, sec. VII, par. 12, Const. of N.J., — (that property shall be assessed for taxation under uniform rules).
(5) 14th Am., sec. 1, Const. of U.S., — (containing the "due process" and "legal protection of the laws" clauses).
Inasmuch as it is held, later herein, — (see the discussion of appellants' fourth ground of appeal), — that the statute does direct the valuation, of property transferred in contemplation of death, to be made as of the date of the transfer, it is necessary to consider these contentions. Little consideration however need be paid to contention (2) or (4).
As to (2), — every taxing statute involves a taking of private property for public use without the making of any specific compensation; but no such taxing statute is invalid for that reason alone. As is said by Chief-Justice Beasley in State,Agens, pros. v. Mayor, c., of Newark, *37 N.J. Law 415, (p.422), "the power of taxing is one of the high and indispensable prerogatives of the government, and it can be only in cases free from all doubt that its exercise can be declared by the courts to be illegal." Appellants' briefs present no grounds of alleged invalidity referable solely to this particular constitutional provision.
As to (4), — this constitutional provision, by its terms, applies only to taxes on property. It is not violated by the statute presently under consideration, which is not a tax on property but on certain transfers of property. Howell v.Edwards, 88 N.J. Law 134, 96 Atl. Rep. 186; affirmed,*89 N.J. Law 713, 99 Atl. Rep. 1070; Keeney v. New York, 222 U.S. 525,
at 534.
As to (1) and (5), — the determination in Howell v. Edwards,supra, also held that this statute of 1909, as amended in 1914, did not contravene these constitutional provisions; but it does not appear that the specific contentions made by the present appellants were considered in that case, — nor in any other reported case in this state which has come to the attention of this court.
The specific contention of appellants in regard to (1) is *Page 574 
that if the present statute imposes a tax on an inter vivos
transfer made in contemplation of death, — (which it does), and if it directs that the tax on such a transfer shall be computed on the basis of the value (of the property so transferred) as of the date when such transfer occurred and became complete, even though that date be four years or more prior to the death of the transferor, — (and it is hereinafter held that the statute does so direct), — then in that respect the statute imposes a tax which is not based on the right of the state to control the testamentary or intestate succession to property, but a tax which is on the right of a living person to acquire property by gift from another living person, and is imposed upon the donee; and that the state cannot validly impose such a tax because it would thereby violate the "natural and inalienable right" of the donee to "acquire" property set forth in Art. I, par. 1, of the state constitution.
In so far as this contention goes to the extent of denying the constitutional power and right of the legislature to impose any
tax upon inter vivos gift transfers payable by the donee out of the property given, it would seem to have no weight. The broad general power of the legislature to tax cannot, of course, be denied. Of course this power is subject to the limitations provided in the constitution. There is nothing, however, in this paragraph of the constitution which expressly prohibits the imposition of a tax on inter vivos gifts, (notwithstanding that it probably does, in effect, prevent any valid statutory enactment purporting to take away from the citizens of the state the right to acquire property by gifts inter vivos). Neither can there be read into it any implication that no tax can be imposed upon such gifts, which would not with equal force and logic apply to prevent the levying of tax on property. The right to possess property is, by this paragraph, placed upon precisely the same footing as the right to acquire property. It will not be contended that this paragraph by implication, prevents the imposition of a tax on property; no more can it be successfully contended that it prevents the imposition of a tax on inter vivos gifts.
Appellants further argue however that this statute does not impose a tax on inter vivos gifts generally, but only upon *Page 575 
some of such gifts; and that, — see (5), above, — it is in conflict with the provision of the federal constitution, which requires equal protection to all persons under the state laws.
Of course it is perfectly well established, — and appellants do not contend otherwise, — that this "equal protection" clause does not require that a state statute must operate on all citizens alike. If it were otherwise, the usual and ordinary general property tax would probably be unconstitutional, because not all citizens have property. A statute is valid if it operates uniformly on all persons within a certain class, if the classification be reasonable, — notwithstanding that the particular class affected by the statute comprises a sub-class of a larger, general class which could have been, but is not, included in the operation of the statute. Thus a statute for the sterilization of mental defectives in institutions supported by the state is not in violation of this constitutional provision because it does not apply to all mental defectives, — Buck v.Bell, 274 U.S. 200.
So also as to taxing statutes, — this constitutional provision "was not intended to prevent a state from adjusting its system of taxation in all proper and reasonable ways." The state may tax certain subjects of taxation and exempt others or tax them at greater or lesser rates, so long as there are no arbitrary, hostile discriminations against particular persons or classes.Bell's Gap. R.R. Co. v. Pennsylvania, 134 U.S. 232. It goes no further than to require that "the rights of all persons must rest upon the same rule under similar circumstances." LouisvilleGas Elec. Co. v. Coleman, 277 U.S. 32, at 37.
In other words, the state may vary the taxes which it imposes upon and among various types of classifications, as long as the classifications are based on reasonable grounds of differentiation and are not arbitrarily discriminatory. "The power of the state to classify for purposes of taxation is of wide range and flexibility" — Louisville Gas Elec. Co. v.Coleman, supra, at p. 37. "If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial *Page 576 
of the equal protection of the law." Brown-Forman Co. v.Kentucky, 217 U.S. 563, at 573. "It is not the function of the court to consider the propriety or justness of the tax, to seek for the motives, or to criticise the public policy which prompted the adoption of the legislation. It is the court's duty to sustain the classification if there are substantial differences between the occupations separately classified. Such differences need not be great." State Tax Commr. v. Jackson,283 U.S. 527, at 537.
If appellants' contentions are correctly understood by this court, — (the arguments in appellants' brief are not as clearly differentiated as would be desirable), — one contention is that the New Jersey statute contravenes the federal constitutional guaranty of equal protection of the laws because it includes provisions for taxation upon transfers inter vivos in a statute the primary purpose and provision of which is to tax testamentary and intestate transfers; and that this is arbitrary and capricious, — that it is arbitrary and capricious to include, in a statute primarily designed to tax transfers occurring at death and based on the state's right to limit and control succession, provisions for the taxing of transfers which do not occur at death and are not based on that right but an entirely different right.
In the first place the New Jersey statute does not include taxation upon all inter vivos transfers, but only those made in the place and stead of testamentary dispositions. Certainly the last mentioned transfers are of a character cognate to testamentary and intestate transfers, and the inclusion of both in the single statute cannot be deemed arbitrary or capricious. In the second place, even if such inclusion of both should be deemed arbitrary or capricious, that would not contravene the federal constitutional clause in question. That provision does not prohibit the inclusion of two dissimilar taxing programs in a single statute; neither does it require (as pointed out above) that all the various taxing statutory provisions of a state shall comprise a logical or harmonious whole. All that it requires is that when certain taxes are imposed which affect only a part of the whole number *Page 577 
of citizens which comprise a class, there must be a reasonable ground for differentiating between those whom the statute does affect and those whom it does not affect.
Appellants do, however, further challenge the validity of the separate classification for tax purposes, of the inter vivos
transfers taxed by the New Jersey statute, — at least so far as concerns transfers made in contemplation of death. They say that it is "arbitrary and capricious" to subject donees of such transfers, who probably have no knowledge that the transfer was intended in contemplation of death, — to subject them to taxation long after the transfers, when the value of the gifts has greatly depreciated. They say also that the statute is "arbitrary and capricious" in that under its provisions, if an inter vivos
donee should predecease the donor, such part of the donee's estate as consists of the donated property is taxed at one valuation (as of the donee's death) and then later, at the death of donor, is again taxed, at a different valuation (as of the donor's death or as of the date of the gift).
Many, if not all, the premises in these arguments are open to contradiction, but need not here be controverted. Most of these arguments are cognizable only by the legislature, — not the courts. All that need here be said is to point out again that the federal constitutional clause in question does not limit the state in the provisions of its taxing statutes, or the reasons for such provisions, or in the differentiations which may be therein made, provided only such differentiations in provisions be based on reasonable differentiations in fact. The constitutional question with which we are here presently concerned is simply whether or not there is a real and reasonable ground for differentiating between transfers inter vivos which are made in lieu of testamentary disposition, — or those which are made in contemplation of death, — and all other transfersinter vivos.
It cannot be open to question that there is a perfectly substantial difference, and perfectly reasonable ground for differentiation, between those gifts inter vivos which are made in lieu of a testamentary disposition, and those which are not so made. The reasonableness of the differentiation is evident when it is considered that the original purpose of the state *Page 578 
was to tax testate and intestate successions and that giftsinter vivos made in lieu of testamentary or intestate disposition, if not similarly taxed, would be made in many instances in order to avoid the tax, and would necessarily result in a very great decrease in the revenue which would otherwise be obtained from the tax on testamentary and intestate succession. (The gifts inter vivos "made in contemplation of death," which are taxed by the statute in question, are gifts made in lieu of testamentary or intestate disposition. Schweinler v. Martin,117 N.J. Eq. 67, 175 Atl. Rep. 71.) Indeed, the fact that the difference between transfers made in lieu of testamentary disposition and those which are not so made is a very real and vital difference was determined in Schlesinger v. Wisconsin,270 U.S. 230, — which holds, in effect, that an inter vivos
transfer which was not in fact a transfer in lieu of testamentary disposition could not validly be taxed under an inheritance transfer tax statute.
The validity of this classification has also been upheld, expressly or by implication, in divers other cases, includingKeeney v. New York, 222 U.S. 525, in which it was held that a state may validly classify (for taxation under an inheritance tax statute) gifts inter vivos intended to take effect at or after the death of the donor, separately and without taxing transfersinter vivos intended to take effect at or after the death of some other person; and in which it was also held that a state statute could validly include gifts inter vivos intended to take effect at or after the death of the donor, along with testamentary and intestate successions, as objects of taxation. Although this case specifically involved a gift intended to take effect at the donor's death, the statute also included gifts made in contemplation of death, and it cannot be doubted that the reasoning of the court applies as well also to this latter class of gifts, — so far at least as concerns this question of classification.
So also the same court, in Coolidge v. Long, 282 U.S. 582,
at 596, (although holding the particular tax invalid because of the retroactive effect of the statute) says that undoubtedly the state has power to lay an excise on the succession to property passing in remainder to a beneficiary by *Page 579 
a deed inter vivos intended to take effect at the donor's death; and expressly holds this in Guaranty Trust Co. v.Blodgett, 287 U.S. 509.
In Milliken v. U.S., 283 U.S. 15, transfers made in contemplation of death were specifically involved, and the court expressly holds that the inclusion of inter vivos transfers made in contemplation of death, in a single class with decedent's estates, to secure equality of taxation and prevent evasion of inheritance taxes, is a permissible classification of an appropriate subject of taxation; and in Heiner v. Donnan,285 U.S. 312, the same court says "There is no doubt of the power of Congress to provide for including in the gross estate of a decedent for the purposes of the death tax, the value of gifts made in contemplation of death."
It is therefore concluded that the classification of giftsinter vivos made in contemplation of death, — in lieu of testamentary or intestate succession, — is a reasonable and permissible classification and that the inclusion of such a class, along with testamentary and intestate successions and gifts intended to take effect at or after the death of the donor, does not violate the fourteenth amendment of the federal constitution.
Appellants further contend however that while there is no natural right to testamentary and intestate succession, and the state may therefore levy upon those state-created rights a tax which varies according to the degree of relationship and also according to the amounts transferred, — (Magoun v. IllinoisTrust and Savings Bank, 170 U.S. 283), and for similar reasons may levy such a tax upon state-created rights to give (intervivos) future estates in property, — (Keeney v. New York,supra and Guaranty Trust Co. v. Blodgett, supra), — nevertheless the right to receive complete and outright giftsinter vivos, is not a state-created right, and a graduated tax thereon cannot similarly be supported; that the present statute does impose such a tax on such gifts, and the gift in the present case is such a gift; that the statute is therefore invalid as being in conflict with Article 1, par. 1 of the New Jersey constitution which establishes the right to acquire property as a natural and inalienable right.
The answer to this is that while it doubtless may be said *Page 580 
that a man has a constitutional right to give, and to receive, property during his lifetime, he has no right, except such as may be given by the state, to direct or control the ownership after his death of such property as he has acquired during his life, — no right to do this by transfer inter vivos any more than by testamentary disposition. With respect to transfers intervivos, this statute taxes only such of those transfers as are made in lieu of testamentary disposition, — for the purpose of accomplishing a transfer or disposition of the ownership of the property with respect to the time after the transferor's death;
and it taxes only such part of such a transfer as comprises, and is intended to effectuate, the disposition and ownership of the property with respect to the time after the transferor's death.
The tax, though the liability arises at the time of the transfer, is not payable, (and bears no interest), until the death of the transferor; obviously therefore, such part of the transfer as effectuates only the disposition and ownership of the propertyduring the transferor's lifetime is not taxed. The situation is in effect just the same as if the statute made the tax payable immediately upon the transfer but directed the deduction (in computing the tax) of the value of the estate for the transferor's life, from the whole value of the property.
It is further contended by appellants that even if the statute were not otherwise objectionable, it is objectionable and unconstitutional in that whereas it directs the valuation of the property (for the purpose of the tax) to be made as of the date of death in the case of testamentary and intestate transfers, it directs that in the case of transfers made in contemplation of death, such valuation shall be made as of the date of the transfer; and that this is an arbitrary, unreasonable, unfair and invalid differentiation and discrimination. Apparently the principal, if not the sole, reason for the making of this objection is that in the instant case it happens that the value of the property was very much greater at the date of the transfer than at the date of the transferor's subsequent death.
As is pointed out later on in this opinion, our statute doesnot make the date of death, as such, the date for the valuation *Page 581 
in cases of testamentary or intestate transfers, (except in the single instance of those contingent future estates which are dependent upon the exercise of a power of appointment). As is perfectly logical and proper for a tax on transfers, it makes (except in that single instance) the date of the transfer the date for the valuation, — and it is therefore only in those cases where no transfer occurs until the date of death that the valuation is made as of the latter date. This is a uniform provision, applicable to all transfers, (except in that single instance), and hence cannot be objectionable. Moreover it is obvious that if any intending transferor desires, for any reason, that the valuation in the case of his transfer should be made at the date of his death instead of at an earlier date, it is entirely within his choice and power to accomplish it. All he has to do is to make his transfer by will instead of by a previousinter vivos transfer. Of course what the transferor or transferee really desires is that the valuation shall be made in his particular case as of the date when the value is lowest. No such provision in the statute could fairly be made or could reasonably be expected.
So far as concerns the exception above mentioned, — (in the instance of those contingent remainders which are dependent on the exercise of a power of appointment), — to the otherwise uniform provision for taking the valuation of the property as of the date of the transfer, this is a matter of no moment in the present discussion. At most it might be held that there could be no valid differentiation between or among contingent future estates, and that the specific separate provision in respect of contingent estates dependent on powers of appointment was therefore invalid. Assuming however that this should be held, it would not affect the situation in the instant case, which does not involve any contingent remainder; and moreover it is held in the Salomon case, infra, that transfers of contingent remainders constitute a validly separate classification from other transfers.
Great emphasis is placed by appellants on the fact that in the instant case the value of the property was some fifteen times as much at the date of the transfer as it was at the subsequent death. That is unfortunate for the present transferee, *Page 582 
but the argument sought to be erected thereon, — that the statute must necessarily be unfair, — is clearly fallacious. The dice simply happened to fall that way in the present instance. The statutory provision is, as it should be, uniform and fair. It was just as possible that the value of the property would greatly increase between the date of the transfer and the date of death as that it would greatly decrease, — (vide the spectacular rises in stock values twenty-five years ago), — in which event the present transferees would greatly have benefited by the statutory provision, and would not be making the present claim that the statutory provision is unfair and invalid.
That the state may validly fix the date of transfer as the date of valuation for the purposes of such a tax as that here under consideration, is beyond question. The "due process" clause of the federal constitution puts no restriction on the states in this regard. Salomon v. State Tax Commissioners,278 U.S. 484. This case upholds, both as regards the "due process" clause and the "equal protection" clause, the right of the state to differentiate between vested remainders and contingent remainders and to make reasonably based differences between them in the provisions of the taxing statute. Obviously, therefore, it is also authority, by necessary implication, for the right of the state to differentiate reasonably between testamentary transfers and transfers inter vivos; although as has been shown, our statute does not differentiate between them in regard to date of valuation, — it fixes the same date, (the date of the transfer), as applicable to both classes.
It may also be mentioned that the Salomon case involved the taxation of a transfer of a contingent remainder, under a state statute which provided that the tax thereon should be measured by the value at the date of death but be not payable until the coming into enjoyment. The validity of this provision was upheld. It is evident that equally as long or much longer a period would be likely to elapse between the date of a testator's death and the actual succession of a contingent beneficiary as that between the date of a transfer inter vivos in contemplation of death and the subsequent *Page 583 
death; and the possibilities of increase or decrease in value during that period would be correspondingly as great or greater.
We come next to the contention of appellants that the statute contravenes that part of Article IV, sec. VII, par. 4, of the state constitution, which requires that every statute "shall embrace but one object and that shall be expressed in the title."
The statute is entitled "an act to tax the transfer of property, of resident and non-resident decedents, by devise, bequest, descent, distribution by statute, gift, deed, grant, bargain and sale, in certain cases."
It is argued that this title does not express, — does not give notice or warning, — that its object is
(1) to tax transfers of property by gifts made and completed four years before death;
(2) to levy a tax upon such gifts greatly disproportionate in amount to that imposed upon the transfer of that property at death;
(3) to tax the depreciation in value occurring after the making of the gift and before death;
(4) to call upon a donee, at some remote date four years or more after receipt of a gift, to pay an excise unrelated in amount to the value of the gift when the tax is levied;
(5) to subject to a heavy liability a donee who is without knowledge of the donor's motive of contemplation of death;
(6) to subject a donee to future remote liability for a large sum notwithstanding the gift becomes worthless or greatly depreciated in value long before any tax is, or can be, imposed;
(7) to levy a tax on inter vivos gifts which varies greatly as between gifts in contemplation of death and gifts intended to take effect at or after death;
(8) to tax inter vivos transfers made in substitution for testamentary transfers, along with testamentary and intestate transfers, but at different and disproportionate amounts based on values unrelated to the values at the date of death;
(9) to tax transfers made by living persons long prior to death; *Page 584 
(10) to lay a tax which is not a succession or inheritance tax, on gifts made in contemplation of death.
It is true that the title does not specifically express any of these objects; but it is equally true that the statute has no such objects. Appellants are either confusing or attempting to confuse, the object of the legislation with the facts which led to the adoption of the legislation and with individual detailresults which ensue in certain particular cases, from that legislation. Furthermore, many of these specifications of appellants, contain assumptions which are contrary to the fact.
For instance, (see (1), (2) and (3) above), — it is not theobject of the statute to tax transfers by gifts made and completed four years before the donor's death. It is not theobject of the statute to tax such gifts disproportionately to transfers occurring at death; and the statute does not do that thing, — it taxes all transfers of a testamentary nature at similar rates, and on values as of the date of transfer. It isnot the object of the statute to tax depreciation in value occurring after the gift and before death; and the statute doesnot do that thing, — it taxes transfers at values as of the date of transfer, and naturally irrespective of subsequent decreaseor increase in value. The object of the statute is to tax testamentary and intestate transfers and transfers inter vivos
which are in the nature of, and in substitution for, such transfers.
Appellants, summarizing, say the title does not express an object
(1) to tax transfers made in contemplation of death, — nor the transferees;
(2) to impose an inheritance tax on transfers inter vivos
made and completed far in advance of death, — nor on the transferees;
(3) to impose on transfers made in contemplation of death (or on the transferees) an inheritance tax grossly disproportionate in amount to that on all other types of transfer;
(4) to tax transfers made in contemplation of death (or the transferees) with some kind of a tax other than an inheritance tax;
or else (they say) *Page 585 
(5) if the title does sufficiently express the purpose of the legislation, the statute is defective in that it embraces more than one object, i.e., it has as one object the levying of an inheritance or succession tax and another entirely different object, the levying of a tax which is not an inheritance or succession tax on transfers (in contemplation of death) made and completed far in advance of death.
A great deal of appellants' argument on this point evidences, and tends toward, confusion of thought. Much of it seems to be based on the idea that each and every result of the operation of the statute in each particular case constitutes an "object" of the statute and must be expressed in the title; and so likewise as to each and every step or detail which the statute includes in the statutory provisions for the accomplishment of the main or real object of the statute. If this were true it would entail an absurd and intolerable result; the titles of most statutes would be as long or longer than the statutes themselves. Obviously it is not true; all that the constitution requires is that theobject of the statute shall be expressed in the title (and that the statute shall not have more than one object).
Duly analyzed, the fundamental propositions of appellants' argument, (as this court understands them), are that the statute presently considered has the object of imposing tax, at the death of the owner, on the transfer of property by succession or devolution of title, and has also the object of imposing a tax, at the time of transfer, on inter vivos transfers made in contemplation of death; that these two objects are so entirely separate and different as not to be susceptible of classification as a single object but necessarily constitute two objects; that if this last mentioned contention is unsound, nevertheless the legislative purpose that the subjects of taxation shall include certain transfers made in advance of death is not expressed in the title.
It was not the legislative object to levy two different kinds of taxes, nor to levy the same tax on two different kinds of transfer; and (as hereinbefore pointed out) the statute does not do either of these things. The object of the statute, and the thing that the statutory provisions effectuate, is the imposition *Page 586 
of a tax on the transfer, from the owner of property to someone else, of that estate or interest in the property which comprises the time subsequent to the death of that owner, — the imposition of that tax on all such transfers, at the time they are made, whether they be made by will or intestate succession, or by deed or other method prior to death.
This is clearly only a single object, — to tax all transfers of that kind. The fact that transfers of that kind may be made in several different ways and that the statute is intended to apply to transfers made in each of those ways, does not result in the statute having a multifarious object. In Sawter v. Shoenthal,83 N.J. Law 499, 83 Atl. Rep. 1004, the court of errors and appeals held (p. 504) that succession by will and succession by intestacy, while different, are not so different as to be incongruous subjects of legislation, and could validly be included together in a statute the object of which was to tax inheritances and was validly so expressed in the title. So, likewise, transfers by deed made in contemplation of death are one type or class of transfers of the post mortem interests or estates in property and may validly be included in a statute the object of which is to tax all transfers of such post mortem
interests or estates.
It is also deemed clear that that object is duly and sufficiently expressed in the title. The contention of appellants is that the title does not express that the statutory object is to tax any transfers other than those occurring at death, — that its expression of the object of the statute is insufficient to give notice that the taxation of any transfers other than those occurring at death, is included within the purpose of the statute; that the title is indeed misleading in that it indicates, by the words "property of resident and non-resident decedents," that it refers only to transfers made at death.
It is difficult to see how any transfer of property of a decedent "by gift, deed, grant, or bargain and sale," — distinguished (as the title does distinguish) from transfers by devise, bequest, descent, or statutory distribution, — could be made except prior to the death of the transferor. Doubtless the title might have been better phrased, but no person of *Page 587 
ordinary intelligence could fail to understand from the title as it stands, that the legislative purpose was to tax, amongst other transfers, certain transfers by gift, deed, and the like, made by the owner in his lifetime. All that is to be implied from the use of the words "property of * * * decedents," read in connection with the rest of the title, is that the statutory purpose is to tax the transfer of only that estate or interest in property which is subsequent to the death of the transferor; and that such is in fact the intent and purpose of the statute is beyond question. The design of the statute is to tax testamentary and intestate transfers and those inter vivos transfers made (in the place and stead of testamentary and intestate transfers) to effectuate the transfer of those ownerships or interests in the property which otherwise would be effectuated by will or intestate succession. Obviously the estates or interests which are transferred by will or intestacy are only the post mortem
estates or interests in the property, — the ownership after the transferor's ownership and possession has been terminated by his death. Likewise, obviously, it is the transfer only of thosepost mortem estates or interests which is intended to be taxed in the case of inter vivos transfers.
It is also the view of appellants that if it be the intent and purpose of the statute to value the property as of the date of transfer, in the case of all or any inter vivos transfers, such intent must be expressed in the title. This view is unsound. Such intent is not the "object" of the statute; it is intent only as to a detail in the carrying out of that object.
Appellants further say that it is unfair and unjust that the statute should provide for valuation as of the date of transfer, in the case of inter vivos transfers, instead of for valuation as of the date of death as in the case of testamentary or intestate transfers; that it is unfair and unjust to impose a tax calculated upon "by-gone," "non-existent" values, values that, contrary to the values taken in the case of testamentary or intestate transfers, "have no relation to the date of death."
As has already been pointed out, the real basis of appellants' objection is that in the instant case the statute works *Page 588 
out to their disadvantage. But this is not due to any unfair or improper provision in the statute which must necessarily work out to their disadvantage. If the value of the property had increased, instead of decreased, after the date of transfer, — (as it might just as well have done: the legislature did not control, and did not seek to control, the rise or fall in value), — the statute would have worked to the advantage of appellants. Doubtless there never has been, and never will be, a statute, at any rate a taxing statute, which is perfect, — which does not result in some imperfections or hardships, real or apparent. But absolute perfection in the statute is not requisite. So long as its provisions are reasonably fair and uniform from a practical standpoint, the statute is valid.
Viewed from this standpoint, the present statute is unassailable in regard to the objections voiced by appellants. It provides that the date of valuation shall be the date of the transfer, in all instances, whether the transfer occurs at death or before. This is uniform; it applies equally whether the value subsequently increases or decreases. If it were certain that values would always decrease there might possibly be more basis for appellants' objection, but it is just as likely, generally speaking, that values will be stationary or will increase, as that they will decrease. Moreover, as heretofore pointed out, the transferor was in nowise compelled to transfer before death; he had his option, and in all fairness and logic, if appellants have any complaint it can only be against him and not the statute.
It is concluded that the statute is valid; and it follows, of course, that appellants have failed to establish error by the commissioner, in that regard, in the taxes assessed by him with respect to the inter vivos transfers of 1928 and 1929 to the wife and daughters.
4. As to taxing the transfers of 1928 and 1929 on the basis of the value (of the property transferred) as of the date of transfer instead of the date of death.
Appellants contend that these transfers, — if made in contemplation of death and taxable for that reason, — should be taxed on the value (of the property transferred) at the date of death. This is a natural endeavor on their part, for concededly *Page 589 
the value of the Renwick Studio, Inc., stock so transferred was very much greater in 1928 and 1929 than at decedent's death in 1933.
What date should be taken as the date of valuation, with respect to transfers of this kind (i.e., made in contemplation of death), — has never been decided in this state. The statute itself (P.L. 1909, c. 228, p. 325, as amended) contains no express provision on the exact point at issue. It does provide that the tax shall be imposed upon the transfer and shall be calculated upon the value of the property transferred, ("such property"). No change has ever been made in the statute, in this regard.
The tax being imposed on the transfer of property and calculated on the value of the property so transferred, it would be the natural and logical inference or implication, — in the absence of any other provision or indication, — that that tax was to be calculated upon the value of that property at the time of the transfer. This deduction or implication is further strongly supported by consideration of the fact that the tax created by the statute is a succession tax, — an excise on the right of the transferee to receive the property transferred. Hartford v.Martin, *122 N.J. Law 283, at p. 286, and cases cited;4 Atl. Rep. 2d 31. Inasmuch as the rate or percentage of the tax varies with the identity of the particular transferee who receives the property or interest therein, and also varies with the total value of the property or interests received by the particular transferee, it is natural and logical to conclude that the legislature, in imposing the tax on the transfer, and with the intent to tax the transferee's right to receive, and in measuring the amount of that tax by the value of the property or interest received by the particular transferee, intended that the valuation of the property or interest so transferred and received should be taken as of the date when the transfer was made, — when the right of the transferee to receive thus arose or became complete.
Is there any indication to be found in the statute, contrary to or inconsistent with this conclusion?
The aforesaid provisions of section 1 (imposing the tax on the transfer and directing that it be calculated on the value *Page 590 
of the property transferred) refer to all the transfers mentioned in, and made taxable by, that section. Such transfers include (1st) testamentary or intestate transfers from a resident of this state; (2nd) testamentary or intestate transfers of property in this state, from a non-resident; (3rd) inter vivos
transfers made in contemplation of death or intended to take effect in possession or enjoyment at or after death; (4th) transfers, testamentary or inter vivos, of contingent future interests, at the time they come into possession or enjoyment or become complete by the exercise of a power of appointment; and (5th), — (by the amendment of 1922, — c. 174, p. 293), — the transfers which occur at the death of a joint tenant. There is nothing in any of this which indicates that the legislature intended the valuation of the property to be made specifically as of the date of the death of the transferor, or as of any date other than the date of the transfer. On the contrary, the fact that these taxable transfers include (under Item 3rd) transfers made prior to the death of the transferor, and also (under Item 4th) transfers which occur after the death of the transferor, tends to strengthen the implication that it is intended that the valuation of the property is to be taken as the date of the transfer, and not as of the date of death (except as and when the date of the death is the date of the transfer).
Section 2 of the statute (both as originally enacted in 1909 and as it continued to exist in 1928-1933) deals specifically with transfers, — both testamentary and inter vivos, — of an estate or interest for life or years followed by a vested interest in remainder. It provides that "When any person shall bequeath or devise or convey" (italics supplied) any property in such successive interests, "the whole of said property so transferred as aforesaid," the whole property (in which these successive interests are thus created) "shall be appraisedimmediately at its clear market value" (italics supplied). Clearly this means "at its then clear market value," i.e., at the time of the "immediate" appraisal; and clearly also it means that the appraisal is to be made immediately upon the occurrence of the transfer, whether it be by will or by inter vivos
conveyance. It does not say, and cannot be interpreted *Page 591 
to mean, that the appraisal is to be made, or the valuation taken, at or as of the date of the death of the testator or grantor, (except as the date of death may happen to be the date of the transfer).
So also in section 3 of the statute, which deals specifically with transfers of an estate for life or years followed by a contingent future estate. It likewise refers to transfers intervivos as well as by will; "an instrument" includes deeds of conveyance as well as wills. Here again the express provision is that the whole property "shall be appraised immediately at its clear market value;" and here again, likewise, this means that the appraisal is to be made, and the valuation taken, at or as of the date of transfer, not the date of death of the transferor, (except as the date of death may happen to be the date of the transfer).
It is of course obvious that in the case of such of the transfers dealt with by these sections, (2 and 3), as are made by conveyance inter vivos, the appraisal if made immediately (as the statute expressly directs), cannot possibly be so made upon a valuation as of the date of the death which has not yet occurred.
The second half of the first paragraph of section 3 deals with contingent future estates arising on the exercise of a power of appointment created by "an instrument" (i.e., either testamentary or inter vivos). The provision here is that the life estate or term for years (preceding the estate which is to arise on the exercise of the power of appointment) "shall be immediately appraised and taxed at its clear market value," — and here again this must mean appraisal and value immediately at the time "the instrument," — whether deed or will, — becomes validly operative. This is rendered even more certain in this instance, because of the specific further provision that the appraisal and taxation of the subsequent contingent interest shall not be made at that time but shall wait until the exercise of the power of appointment and shall then be taxed at the value as of thedate of death of the creator of the power, i.e., the testator or grantor.
Reference has already been made earlier herein to this particular provision; but at present it is important only to *Page 592 
point out that this is the single and only transfer (the transfer of a contingent future estate arising by exercise of a power of appointment) in respect of which the statute expresses, or gives any indication of, any intent that the tax is to be calculated on the valuation as of the date of death. In respect of all other transfers the statute expresses or clearly implies the intent that the valuation is to be taken as of the date of the transfer. True it is that section 2 and the first half of the first paragraph of section 3 refer expressly only to transfers which comprise transfers of successive interests in the same property, and that there is no similar express provision as to transfers which are simple transfers of the whole estate or complete and absolute interest in property. But it is the natural and inevitable conclusion that the appraisal and date of valuation are to be the same in the case of these simple transfers as in the case of the transfers of the successive interests in property. It is obvious that the reason for making special provisions dealing with the transfers of successive interests was the desire and intent to provide that the tax imposed in respect of the transfer of the future interest should not be due and payable until such future interest should come into possession or enjoyment, but that the tax on the (taxable) transfers of interests presently vesting in enjoyment as well as in title should be immediately due and payable. (It is to be noted that section 2, as originally enacted in 1909, deferred the payment of tax on vested remainders until they came into possession or enjoyment. By the amendment P.L. 1918, c. 283, p. 1074 such tax was made payable immediately.) It is obviously to be concluded that the tax on the (taxable) transfer of the presently vesting whole interest in property is to be calculated in the same way as respects date of valuation, as in the case of the transfers where successive interests are transferred.
If anything further is required, final and conclusive proof that the legislature did not intend the valuation to be made as of the date of death, as such, — (except in the single case of the contingent future interest arising from the exercise of a power of appointment, just hereinbefore referred to), — is *Page 593 
evident upon consideration of the history of the legislation and comparison of the provisions of the previous statutes with those of the statute of 1909.
The first such statute enacted in this state was P.L. 1892, c.CXXII, p. 206. That statute imposed a tax in respect of testamentary and intestate transfers and transfers inter vivos
intended to take effect in possession or enjoyment after the transferor's death, except where such transfers were made to certain specified close relatives. (It did not purport to impose a tax in respect of inter vivos transfers made in contemplation of death.) By section 2 of that act it was provided that where such transfers were made to any one of the specified close relatives, for life or a term of years with remainder to transferees who were not within the specified close relatives, the property so transferred should be appraised immediatelyafter the death of the testator or grantor "at what shall then be the fair market value thereof." It went on to provide that after deducting the value of the (non-taxable) life estate or term for years, the tax on the remainder should be immediately due and payable, but such remainderman could elect not to pay it until he came into the actual possession or enjoyment.
Although this section 2, under its actual language, refers only to transfers comprising the transfer of an estate for life or years to an exempt transferee followed by a transfer of a succeeding future estate to a non-exempt transferee, the natural presumption would be that its provisions as to time of appraisal and date of valuation (there being no other provision in the statute on these points with respect to other transfers) would likewise apply to all the other transfers made taxable by the statute, — i.e., transfers to non-exempt transferees of the whole interests in property, and transfers comprising a transfer to a non-exempt transferee of a present interest for life or years followed by a transfer of a succeeding future interest. As to this latter class of transfers, this presumptive provision was made express and certain by the supplement enacted in 1903, — c.90, p. 128. (This was a supplement to the Act of 1894, but the provisions above mentioned in the Act of 1892 were the same in the Act of 1894.) *Page 594 
It may help to avoid confusion if it is observed that this original statute imposed the tax on the property instead of on the transfer; imposed tax only if and where the property was transferred to transferees other than the specified exempt transferees; and imposed tax to be calculated in all instances at the flat rate of five percent. irrespective of the identity of the (taxable) transferee and irrespective of the amount of property transferred; also that the statutes of 1893, — c. CCX,p. 369 and of 1894, — c. CCX, p. 318, are practically identical with the statute of 1892, except for certain additions to the list of exempt transferees; also that in these early statutes there was no distinction or differentiation between vested and contingent future estates such as is provided in and by sections 2 and 3 of the Act of 1909.
This tax legislation therefore did, in the beginning, expressly provide that the valuation should be made, in all cases, as of the date of the death of the testator or grantor, — the taxable inter vivos transfers being only those intended to take effect in possession or enjoyment at or after the death of the grantor, to wit, future estates, presently conveyed during the life of the grantor but commencing at or after his death. And these statutory provisions so continued to exist, without change so far as is material to the present consideration, down to 1906.
By the amendment of 1906, — P.L. 1906, c. 228, p. 432, — material changes were made in section 1 of the act. The tax was imposed on the transfer, instead of on the property; and intervivos transfers made in contemplation of death, were for the first time made taxable. No change however was made in the provisions of section 2, that the property was to be appraisedimmediately after the death of the transferor, at its then
market value. This provision for computation of the tax on the value of the property as of the date of death of the transferor continued, and was of course applicable to inter vivos
transfers made in contemplation of death, as well as to testamentary and intestate transfers and inter vivos transfers intended to take effect in possession or enjoyment at the death of the transferor.
So the legislation stood, (so far as concerns our present *Page 595 
question), until the passage of a complete new statute in 1909, —P.L. 1909, c. 228, p. 325, — which is the statute which (with some subsequent changes) was in force at the time of the intervivos gifts, and decedent's death, in the present case. In that statute, (see section 2 and section 3, corresponding to section 2 of the prior statute), the provision that the tax should be computed on the valuation as of the date of death, which had theretofore applied to all transfers, including inter vivos
transfers made in contemplation of death, was entirely eliminated.
The logical and necessary conclusion from this change, — the elimination of the express statutory provision which had theretofore existed, providing that the valuation should be made (in all cases) as of the date of death, is that it was the legislative intent that thereafter the valuation should not be made as of the date of death, as such, but that the valuation should be made as of the date of the transfer, — as hereinbefore set forth.
There is nothing in any of the supplements or amendments to this act of 1909, — adopted either prior to 1928, 1929 or 1933, or even down to the present time, — which has any bearing on the point under discussion, — much less any indication contrary to the conclusion above reached, i.e., that according to the true intent and meaning of the statutory provisions, the legislature has directed that the valuation of the property for the purpose of calculating the tax is to be taken as of the date of the transfer, — except in the single instance of transfer of a contingent future estate dependent on the exercise of a power of appointment (in which case the value of the property is to be taken as of the date of the death of the grantor or testator).Why this single exception was made, is not readily discernible; but obviously it does not change the law as to any other instance.
Inasmuch as the transfers in the instant case do not involve any transfer of any future estates, either contingent or vested, but only transfers of the whole interests in the property, it is not necessary to the determination of the present appeal to continue the inquiry in order to ascertain what the legislature has directed as to the particular point of time as of which the *Page 596 
valuation is to be made in the several varying types of cases where the complete transfer is not completely effected at a single point of time but occupies an appreciable period of greater or less duration, — i.e., in the case of transfers of future interests (whether vested or contingent) where the transfer comprised in the will or deed becomes a valid and effective transfer on the death of the testator or on delivery by the grantor, but the receipt by the transferee of the interest transferred does not become vested in title (contingent estates) or in possession or enjoyment (both vested and contingent estates) until a future time.
It may not be amiss, however, to point out that it is of course open to the legislature to designate any particular point in such a chain or period of transfer, as the point when the tax is to attach or as the date as of which the valuation of the property is to be taken for the purpose of calculating the tax; also that it is obviously impossible, in the case of a tax which varies with the identity of the transferee and the total amount received by the transferee, to have the tax attach, (except perhaps in some inchoate form), much less be calculable, — on a transfer of a contingent future interest, — prior to the happening of the contingency; also that the legislature has specifically directed (last half of first paragraph of section 3 of the act of 1909) that in the case of the contingent future interest dependent on the exercise of a power of appointment, the tax shall definitely attach at the time of the exercise of the power of appointment (irrespective of whether or not the transferee then comes into enjoyment or possession) and directs that it shall be calculated on the basis of the value of the property at the date of death of the testator or grantor, whereas it provides in the earlier portion of that paragraph (as already pointed out) that in the case of a contingent future estate other than one dependent on the exercise of a power of appointment, the tax shall definitely attach at the time the transferee comes into possession or enjoyment, and in the case (section 2 of that statute) of the vested future estate, that the tax shall attach immediately upon the operation of the will or deed and the valuation be taken as of that same date. (This latter is further *Page 597 
corroborated by the amendment of 1918, c. 283, p. 1074, which makes the tax in respect of vested future estates immediately due and payable, instead of at the time of coming into possession or enjoyment as had theretofore been provided.)
(It is difficult, if not impossible, to conceive of any logical reason why the legislature should thus have differentiated between a contingent future estate which is dependent on the exercise of a power of appointment and one which is not so dependent; but that the statute does make such an express differentiation is indisputable. It is also difficult, if not impossible, to conceive how this statutory provision as to contingent future estates dependent on the exercise of a power of appointment can possibly be carried out in some cases. Suppose for instance a transfer inter vivos made by A in contemplation of death, by a deed which comprises a life estate to X and remainder at the death of X to such person as X shall appoint either by deed or by will. A may live several years after making this transfer; X may exercise the power of appointment, by deed, in favor of Y several years prior to the death of either A or X. Under the terms of the statute the transfer is to be taxed at the time of such exercise of the power of appointment, and is to be calculated on the value of the property as of the date of the death of A, — which has not yet occurred! — and the tax (by the further express provisions of the statute) is made due and payable two months after Y comes into possession or enjoyment, (which would be at the death of X) whereas A may still then be living and continue to live a number of years after that time!)
The present appellants argue that since the main purpose of the taxing statute is to impose a tax on transfers at death, the tax on transfers made inter vivos in avoidance of transfers at death should likewise be treated as if made at death and be calculated on valuations as of the date of death; that the sole object of the legislature in taxing any transfers prior to death was to prevent the loss of the tax which would be *Page 598 
received at death if the transferor had not made a transfer prior to death and that therefore the valuation should be taken as of the date of death, so that the state would receive the same amount of tax it would have received if the transferor had retained the property until his death. This argument is not without some logic and plausibility, but it is an argument which should be addressed to the legislature. It may well be that such an argument might influence the legislature to amend the present statutory provisions in accordance therewith; but it can have no force or effect on this appeal, inasmuch as the court finds that the legislature has directed otherwise by the statutory provisions presently in effect.
Appellants further argue that the provision as to deductions, — which was added (by the amendment P.L. 1922, c. 174, p. 293) to that paragraph of section 1 of the act which immediately follows Item Fifth, — indicates that the valuation is intended to be made as of the date of death in all instances. That provision says "In determining the clear market value of such property" (i.e., the property transferred by transfers made taxable), "the following deductions and no others shall be allowed" and proceeds to specify the debts of decedent at death; expenses of funeral and last illness; a proportion of state, county and municipal taxes on the property; administration expenses; and transfer taxes payable to other states or governments. Although it is true that the language of this provision is completely general and therefore apparently applicable to all taxable transfers, it is obvious that it not only is not intended to apply (at least in full) to transfers inter vivos but that it is not intended to apply (at least in full) to all testamentary transfers. Transfersinter vivos are all, or practically all, transfers of specific property; so also are very many indeed of testamentary transfers. In computing the value of a particular piece of property transferred, whether by deed or by will, it would be perfectly proper to provide for deduction of a proportion of state, county or municipal taxes on that property, also of a federal or foreign state transfer tax on the transfer of that property; but obviously it was not intended that deductions of the debts of the grantor or testator, or the expenses of his last illness, *Page 599 
his funeral or his administration expenses, should be made in computing the value of specific property transferred. Those deductions should be, and are intended to be, made only in computing the value of gifts of residuary estate or of distributive shares in cases of intestacy.
Clearly, also, the fact which happens to exist in the instant case, — that there has been a very great diminution in value between the date of the inter vivos transfer and the date of the death of the transferor, — can have no bearing in determining what the legislature means by what it has said in the statutes it has enacted. The fact might equally well have been the converse, — there might have been a very great increase in value instead of diminution. That was indeed the situation in In re Hartford,122 N.J. Eq. 489, 194 Atl. Rep. 800, where the then appellants contended that the valuation should be taken as of the date of the inter vivos transfer and not the date of death. That which the legislature has provided, must apply equally in either situation.
Appellants also rely on the language of certain reported opinions in this state, as indicating judicial determination that the valuation is to be taken in all cases, or generally, as of the date of death. All intestate transfers and the great majority of testamentary transfers, are transfers which occur, and are complete, at the death of the transferor. As to them, of course, the date of the death and the date of the transfer are one and the same. There are divers reported cases in this state in which statement is made to the effect, — or it is taken for granted, — that the date of valuation is the date of the death; but it will be found upon examination that (with the exception of theHartford case, later discussed), these are cases of intestate or testamentary transfer in which no question arose, or could have arisen, to differentiate the date of valuation as between the date of transfer and the date of death; and the reason for this taking of the date of death as the date of valuation in the ordinary cases, is simply that in the ordinary case the date of death is the date of the transfer and the valuation is made on that date because it is the date of the transfer. *Page 600 
Thus, in Security Trust Co. v. Edwards, *90 N.J. Law 558, at p. 568, 101 Atl. Rep. 384, the appellate court says, (referring to a tax under the same statute as that here subjudice), — "The tax is on the succession, which occurs at death." Of course the court did not mean that the succession always occurs at death; it was dealing with a case in which the succession did occur at the death of the testator. The case is in nowise any authority for the principle that the statute intends the valuation to be made (in the ordinary case) as of the date of death, as such; but rather is it authority (though dictum) for the principle that the statute intends the valuation to be made (in the ordinary case) as of the date of the completion of the transfer, — the date of the succession by the transferee.
There are also some cases of transfers inter vivos where the tax was calculated on the value of the property as of the date of death, and the tax was affirmed on appeal; but in these cases no issue was raised in the appeal as to the correctness of the date of valuation and the point was not considered by, nor brought to the mind of the court. Appellants concede that there is no case in this state in which the point has been considered and adjudicated, — except the Hartford case, infra.
Some cases from other states have been cited, by appellants and by respondents, but need not here be mentioned or discussed because of the fact that the statutory provisions and the statutory history in the states where they were adjudicated differ from those in this state on which the conclusion reached herein has depended.
In In re Hartford, supra, this court considered an appeal from a determination by the commissioner and affirmed a tax computed on valuation as of the date of death, in a case where the transfer was inter vivos and was found by this court to be a transfer not only made in contemplation of death but also intended to take effect at or after death. The appellants there conceded (see p. 498) that in the case of an inter vivos
transfer of the latter kind, the valuation should be made as of the date of death; their contention was that the transfer there involved was not one of that kind but was, at most, a transfer made in contemplation of death, and *Page 601 
that as to such a transfer the valuation should be made not as of the date of death but as of the date of the transfer.
The things which were actually decided in that case, by this court, were (1) that that transfer was a transfer intended to take effect at or after death; (2) that it was also a transfer made in contemplation of death; (3) that the fact that it was a transfer of both kinds did not make it erroneous to compute the tax in the same way it would be computed if it had been only a transfer of the first kind; (4) that therefore, since appellants conceded that the tax should be computed on the valuation as of the date of death in a transfer of the first kind, there had been no error in the computation.
True it is that the language of this court in that opinion clearly indicates that it was its view at that time that in a case of inter vivos transfer intended to take effect at or after death the computation of tax should be made on the valuation as of the date of death; and that the conclusions reached in the instant case as to the meaning and intent of the statute are inconsistent with that view. It is equally obvious, however, that the views expressed in the Hartford case were not based upon any such thorough and exhaustive study of the statutory provisions and their history as has been made in the instant case; and that the reason no such thorough study was made in that case was that the appellants admitted that the valuation should be taken as of the date of death where the transfer was one intended to take effect at or after death.
Just where all this leaves the law, as to cases of the kind last mentioned, need not here be decided. The decree of this court in the Hartford case was later reviewed on writ ofcertiorari, by the supreme court, (sub nom. Hartford v.Martin, 120 N.J. Law 564, 1 Atl. Rep. 2d 13), which dismissed the writ; and this judgment of the supreme court was subsequently affirmed by the court of errors and appeals, ___Id. [*]122 N.J. Law 283, 4 Atl. Rep. 2d 31. Neither in the supreme court, however, nor in the court of errors and appeals, any more than in this court, was there any contention made that in the case of a transfer intended to take effect at or after death the valuation should not be taken as of the date of death. The appellants admitted that in such a case *Page 602 
the valuation should be taken as of the date of death; and no determination was made, nor any consideration given, by the court as to any issue or dispute on this point, because no such issue or dispute existed.
In any event, whatever else may be the force and effect of the several determinations in the Hartford case, it is obvious that they in nowise comprise any determination that the valuation is to be made as of the date of death in the case of an intervivos transfer which is made in contemplation of death and which is not a transfer intended to take effect at or after death.
It is concluded that in the instant case, the transfers being transfers in contemplation of death and not transfers intended to take effect at or after death, the commissioner correctly took the valuation of the property as of the dates of the transfers, as the basis for the computation and levying of the tax.
5. As to the taxability of the remainders under the three deeds of trust.
On December 31st, 1923, decedent executed three trust deeds or agreements with the Irving Bank-Columbia Trust Co., each for the benefit of one of his three daughters, providing that as to certain assets transferred to the trustee the income therefrom was to be paid to the daughter for life and after her death to her children until they attained age 30, when they should receive the principal, or if the daughter died without issue disposition was to be made in favor of her sisters and their children.
Each of these agreements contained an express reservation of power to the donor to revoke or terminate the trust, and a power to amend. On December 31st, 1926, the donor made the trust irrevocable; but did not give up his right to amend. Under this latter power he (and the trustee) on July 18th, 1929, executed an amended agreement (in the case of each trust), whereby it was provided that the income be paid to the daughter for life, (as in the original agreement), but that on her death, (whether or not she left issue), the principal was to be paid back to him, (the donor), freed of any trust, if he survived her, but if he predeceased her the principal *Page 603 
was to be paid to Renwick Studios, Inc.; and he still reserved and retained the power to amend.
No other amendment was made, nor any termination of his power to amend, prior to the donor's death on March 15th, 1933. The commissioner appraised the assets in each trust (deducting therefrom contributions made thereto by the daughters themselves and trustee's commissions); computed the value of the respective life estates of the daughters in these respective net principals; and arrived at the valuation of the remainder (in each case), by deducting from such principal the value of the life estate. He then assessed tax on the transfers of these remainders to Renwick Studios, Inc., on the ground that such transfers were intended to take effect after the death of the donor. No question is raised by appellants as to the valuations or the method of computing this tax; the sole question, if any, is as to whether they are taxable, — (except that they also raised the question, hereinbefore discussed and decided under Point 1 hereof, as to the correctness of the 8% rate applied by the commissioner). Indeed, as this court understands the position of appellants as set forth in their briefs, they do not challenge in this appeal the taxability of these transfers of remainders; although counsel for respondent has taken the contrary view.
In any event, the taxability of the transfers seems beyond question, under the authorities. The original agreements were both amendable and completely revocable by the donor. The amended agreements remained still amendable by the donor up until his death. Consequently the particular transfers to the particular beneficiaries therein provided, remained defeasible and contingent until the power of amendment was terminated by the donor's death. If the remainder interests (following upon the life estates of the daughters) given by these agreements to Renwick Studios, Inc., had been free from the characteristic of contingency which resulted from the provision for the reversion of principal to the donor if he survived the life tenants, they would still be taxable transfers, because as transfers they would not become complete until their defeasible character was terminated by the donor's death without having exercised his power of amendment. *Page 604 
See In re Fosdick, 102 N.J. Eq. 45, 139 Atl. Rep. 318;Plainfield Trust Co. v. McCutcheon, 8 N.J. Mis. R. 593,151 Atl. Rep. 279; affirmed, *108 N.J. Law 201, 154 Atl. Rep. 629;Saltonstall v. Saltonstall, 276 U.S. 260, at 271; ChaseNational Bank v. U.S., 278 U.S. 327, at 338. On the other hand, if these amended agreements had not been subject to further amendment, the gifts in remainder therein provided in favor of Renwick Studios, Inc., are contingent upon the death of Renwick prior to the deaths of the life tenants. The taking effect of these remainders, in Renwick Studios, Inc., therefore could not, — and necessarily was intended not to, — occur until the death of the donor Renwick, himself; and hence these transfers are taxable. Koch v. McCutcheon, 111 N.J. Law 154,167 Atl. Rep. 752; Chase National Bank v. U.S., supra; Tyler v. U.S.,281 U.S. 497; Klein v. U.S., 283 U.S. 231.
6. As to the correctness of the commissioner's appraisal of the shares of stock of Renwick Studios, Inc.
The commissioner, in arriving at the valuation of the transfers of 1928 and 1929 of shares of stock of Renwick Studios, Inc., to Renwick's wife and daughters, appraised those shares at "book value," and determined that the value per share on June 22d 1938 (the date of the first transfer) was $65.66 and on March 1st, 1929 (the date of the second transfer) was $81.64.
Appellants specify this as error, (quite separate and apart from their contentions that the transfers were not taxable at all, and that if taxable the tax ought not to be computed on the value as of the date of the gift). They contend that these valuations of the shares of stock are excessive, and that the commissioner has erred in his findings in this regard.
The burden of establishing error on the part of the commissioner, — of proving that his valuation is excessive, — is of course on the appellants. In re Bottomley, 92 N.J. Eq. 202,111 Atl. Rep. 605; In re Pierce, 89 N.J. Eq. 171,104 Atl. Rep. 298; In re Grabfelder, *107 N.J. Law 520, 153 Atl. Rep. 532.
They must show either that there was no evidence to support the commissioner's findings as to value, or that he erred in regard to the application of legal principles. *Page 605 In re Gould's Estate, 105 N.J. Eq. 598, 148 Atl. Rep. 731;Spalding v. Martin, 119 N.J. Eq. 603, 183 Atl. Rep. 281.
That there was ample evidence before the commissioner to support his findings is evident from the record; and indeed is not denied. In determining the assets of the corporation he took the market values, on those dates, of the several stocks which constituted the greater part of the company's assets, and he fixed the value of the real estate owned by the corporation, at figures very considerably lower than the values at which such real estate was carried on the books of the company. Deducting the liabilities of the company from the total value of the assets, he divided the net balance by the number of shares of stock outstanding.
That this "book value" method of arriving at the value of the shares of stock is correct, in the case of "close" or family corporations, which have no market quotations and of which there are few or no sales, is established. In re Moore, 104 N.J. Eq. 400,145 Atl. Rep. 737; Spalding v. Martin, supra. Admittedly, and under the evidence, this corporation was of that kind, and there had been no sales of its stock at or near the dates in question.
The contention of appellants seems to be that while this "book value" method is proper "under normal circumstances," it was not proper in the instant case because those were "boom" times and the then values, even the market values of the stocks held by the company, were fictitious, excessive, temporary and speculative. The further argument is made that the subsequent deflation of values in the depression which arrived at the end of 1929 proves that the values fixed as of June, 1928, and March, 1929, were not the actual values as of those dates; also that no one would have bought the shares of the Renwick Studios, on those dates, at the prices found by the commissioner.
None of this argument is sound. Probably no outsider would ever have bought stock of this close family corporation for a price higher than a small fraction of its actual value, — (and that is the reason why the book value method of appraisal, in these instances, was established), — but that does not prove that the value of those shares would not be greater *Page 606 
than the price which such an outsider would be willing to offer. Obviously the members of this close corporation could by liquidating and dividing the proceeds, have obtained a far greater amount than the aggregate value of the outstanding shares at the price per share which such outsiders would offer for a single share or a block of shares. (Appellants offer no suggestion whatever as to any method of appraisal which would be, in their view, fair and proper.)
Obviously the fact that the value of particular property, some months later, was considerably less (or higher) than its established market value at the earlier date, does not prove that that value at the earlier date was not the fair value; and in any event, the statute prescribes the "clear market value." Furthermore, the argument of appellants, carried to its logical conclusion, means this: — that if the company's assets consisted wholly of shares of stock daily dealt in on the stock exchange, and the company had no debts, nevertheless the value of its own shares of stock must necessarily be much less than the amount for which they could have sold all the stock owned by the company, at the market prices on that date; which is clearly untrue.
Appellants have established no error in this regard.
7. Appellants' final specification of error is in regard to the assessment of ten percent. interest from and after March 15th, 1936, on the total tax assessed by the commissioner. Respondent concedes that there has been necessary litigation, and that therefore the ten percent. rate is not properly chargeable at the present time. The assessment of interest at ten percent. will therefore be set aside. No determination need be, — nor indeed can properly be, — made at the present time as to the rates or amounts of interest for which appellants will ultimately be legally liable. *Page 607